UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

Derick Aziwung,
    Petitioner,

    v.

David Wesling, Boston Field
Office Director, U.S. Immigration
and Customs Enforcement and Removal
Operations ("ICE/ERO"); Antone Moniz,
Superintendent, Plymouth County
Correctional Facility; Todd Lyons,
Acting Director of U.S. Immigration
Customs Enforcement ("ICE"); Markwayne
Mullin, Secretary of the Department of
Homeland Security ("DHS"); U.S. Department
of Homeland Security; and Todd Blanche,
Acting Attorney General of the United States,
    Respondents

Case No. 26-cv-0325-SM-TSM
Opinion No. 2026 DNH 067

**O R D E R**

Derick Aziwung, who has been detained by Immigration and Customs Enforcement ("ICE") since August 20, 2025, petitions the court for an order directing the respondents to release him immediately from ICE custody.  See generally 28 U.S.C. § 2241. The federal respondents object.

For the reasons discussed, Aziwung's petition is necessarily denied.

1

## Background

Aziwung is a native and citizen of Cameroon who is currently detained by U.S. Immigration and Customs Enforcement (ICE) at the Strafford County House of Corrections in Dover, New Hampshire. Aziwung asserts that he was subjected to persecution in Cameroon because he is an Anglophone — that is, a member of the English-speaking minority. As a result of his Anglophone status, Aziwung was threatened, arrested, detained, beaten, and tortured.

Aziwung fled Cameroon, and entered the United States on September 25, 2021, at the Mexican border. He was taken into custody. He was served with an Order of Removal on October 21, 2021, and ordered to appear before the immigration court in Elizabeth, New Jersey. On November 18, 2021, Aziwung was paroled into the United States. He applied for asylum on November 24, 2021.

Nearly four years later, on August 20, 2025, Aziwung was arrested for driving under the influence of alcohol. He pled not guilty, and was released on his own recognizance. That DUI charge remains pending. After Aziwung was released pending trial, he was immediately detained by ICE agents at the Lynn District Courthouse and taken into immigration custody.

2

On November 3, 2025, following a hearing before an immigration judge, Aziwung's application for asylum was denied. However, the immigration judge granted Withholding of Removal to Cameroon under Section 241(b)(3) of the Immigration and Nationality Act, 8 U.S.C. § 1231(b)(3).  Aziwung promptly appealed the denial of his application for asylum.  That appeal is currently pending before the Board of Immigration Appeals (BIA).

Aziwung has remained in detention since August 20, 2025. He was originally held at the Plymouth County Correctional Facility in Plymouth, Massachusetts, but was subsequently transferred to the Federal Correctional Institution in Berlin, New Hampshire.  He challenges his continued detention on statutory and constitutional grounds, arguing that it violates the framework described by the Supreme Court in Zadvydas v. Davis, 533 U.S. 678 (2001), as well as the Due Process Clause of the Fifth Amendment.

## Discussion

As a preliminary matter, the parties dispute the statutory basis for Aziwung's detention.  Aziwung says that he is detained pursuant to either 8 U.S.C. § 1231(a)(6) or 8 U.S.C. § 1226(b), while the government asserts his detention is governed by 8 U.S.C. § 1225(b)(2).  The statutory basis for his detention

matters because he contends that his continued detention violates the Supreme Court's interpretation of 8 U.S.C. § 1231(a)(6) in Zadvydas v. Davis, 533 U.S. 678, 690 (2001).

1.    Applicability of Section 1231(a)(6) and Zadvydas v. Davis

In Zadvydas, the Supreme Court considered whether Section 1231(a)(6) "authorizes the Attorney General to detain a removable alien indefinitely beyond the removal period or only for a period reasonably necessary to secure the alien's removal."  Id. at 682.  The Court determined that, to avoid the "serious constitutional concerns" associated with the indefinite detention of noncitizens once removal proceedings have come to an end, 8 U.S.C. § 1231(a)(6) includes an "implicit 'reasonable time' limitation."  Id.  "As the Court explained the new limitation, if a noncitizen has been detained for more than six months, and he provides 'good reason to believe that there is no significant likelihood of removal in the foreseeable future,' then the noncitizen must be released under supervision unless the government can rebut the noncitizen's showing."  G.P. v. Garland, No. 1:23-CV-322-PB, 2024 WL 328435, at *3 (D.N.H. Jan. 29, 2024) (summarizing and quoting Zadvydas, 533 U.S. at 701).

Section 1231(a)(6) is not applicable to a petitioner's detention unless and until the entry of a final order of removal, however.  See 8 U.S.C. § 1231 (a)(1)(B) (stating

4

"removal period" does not begin until latest of three events: (1) the "date the order of removal becomes administratively final;" (2) if the removal order is judicially reviewed and the court orders a stay of removal, the date of the court's final order; and (3) if the alien is detained or confined for a purpose other than immigration proceedings, the date the noncitizen is released).  See also Johnson v. Guzman Chavez, 594 U.S. 523, 534–35 (2021) (stating that a noncitizen must both be "ordered removed," and his removal order must be "administratively final" for 8 U.S.C. § 1231(a)(1) to apply). The applicable regulations advise that an immigration judge's order of removal becomes final:

> (a) Upon dismissal of an appeal by the Board of Immigration Appeals;
>
> (b) Upon waiver of appeal by the respondent;
>
> (c) Upon expiration of the time allotted for an appeal if the respondent does not file an appeal within that time;
>
> (d) If certified to the Board or Attorney General, upon the date of the subsequent decision ordering removal;
>
> (e) If an immigration judge orders an alien removed in the alien's absence, immediately upon entry of such order; or
>
> (f) If an immigration judge issues an alternate order of removal in connection with a grant of voluntary departure, upon overstay of the voluntary departure period, or upon the failure to post a required voluntary departure bond within 5 business days.

8 C.F.R. § 1241.1(c).  See also Riley v. Bondi, 606 U.S. 259, 267 (2025) ("An order of removal becomes final at the earlier of two points: (1) 'a determination by the [BIA] affirming such order,' or (2) 'the expiration of the period in which the alien is permitted to' petition the BIA for review of the order.") (quoting 8 U.S.C. § 1101(a)(47)(B)).  As previously stated, Aziwung's appeal is currently pending before the Board of Immigration Appeals.  His removal order is therefore not yet final.  Section 1231(a)(6) is inapplicable.

Aziwung argues that Zadvydas nevertheless applies because his removal is not reasonably foreseeable.  That is, he says, there is no significant likelihood of his removal in the foreseeable future because: (1) he was granted withholding of removal to Cameroon, and cannot be deported to his home country; and (2) the BIA is currently considering his appeal.  Aziwung marshals data from the American Immigration Council which discloses that, in 2017, only 21 individuals were removed to a third country (i.e., not their country of origin), or 1.6 percent of the 1,274 individuals that had been granted withholding of removal that year.  See Document No. 11 at Exhibit 1.  Thus, Aziwung argues, statistically, his deportation to a third country is highly unlikely.

Our court of appeals found a similar argument unavailing in

G.P. v. Garland, 103 F.4th 898, 901-02 (1st Cir. 2024).  In

G.P., the noncitizen pursuing withholding of removal had been

detained for nearly four years while his case proceeded through

various appeals, and contended that there was "no significant

likelihood" of his removable in the foreseeable future.  Id. at

899.  Despite the length of G.P.'s detention, the First Circuit

distinguished his circumstances from those in Zadvydas, writing:

> G.P. . . . has not exhausted his administrative
> remedies.  Rather, he is being detained because his CAT
> proceedings remain pending.  While we acknowledge that
> the length of those proceedings now well surpasses the
> presumptively reasonable six-month post-removal period
> set out in Zadvydas, there is no indication that they
> have dragged on because of bad faith or undue delay by
> the agency.  Furthermore, G.P. does not dispute that,
> if he is ultimately denied relief, the government will
> be able to move forward with removing him for a second
> time to the Dominican Republic.  There thus appears to
> be little chance of a removable-but-unremovable limbo
> for him.  See id. at 697 ("[P]ost-removal-period
> detention, unlike detention pending a determination of
> removability or during the subsequent 90-day removal
> period, has no obvious termination point." (emphasis
> added)).  Instead, once G.P.'s current withholding-only
> proceedings end, he will either be removed to the
> Dominican Republic or the government will have to begin
> the process of finding a different country to accept
> him.  Under the present circumstances then, he has
> failed to show that there is "no significant likelihood
> of [his] removal in the reasonably foreseeable future."
> [cite source]

G.P. v. Garland, 103 F.4th 898, 902 (1st Cir. 2024).

Aziwung's argument is unavailing for similar reasons.  As in G.P., Aziwung's proceedings "will eventually conclude, after which he will either be released, removed to [Cameroon], or removed to a third county."  Rosales-Navares v. FCI Berlin, Warden, et al., No. 1:26-CV-232-PB-AJ, 2026 WL 1133463, at *3 (D.N.H. Apr. 27, 2026) (citing G.P., 103 F.4th at 901-02).  Accordingly, he fails to demonstrate that there is no significant likelihood of his removal in the foreseeable future. Zadvydas, 533 U.S. at 701.

For all the above reasons, Aziwung is not eligible for immediate release under Zadvydas.

2.   Due Process Violation

Aziwung also argues that his prolonged and indefinite detention is violative of his due process rights.  The government responds by noting that the Supreme Court has consistently upheld the constitutionality of detention during deportation proceedings like Aziwung's.  And, respondents argue, the only potential remedy currently available to Aziwung is a bond hearing, which Aziwung has already received.  At that bond hearing, the immigration judge determined that Aziwung's continued detention is justified because he was adjudged a danger to the community.  Aziwung failed to timely appeal that

8

decision.[1]  For all those reasons, respondents say, Aziwung's petition should be denied.

In response, Aziwung insists he is not seeking a bond hearing, nor does he seek to appeal the IJ's bond hearing decision.  See Document No. 11 at 10-11.  Instead, he insists that, because the IJ granted Withholding of Removal to Cameroon, he is eligible for release.  Aziwung relies on German Santos v. Warden Pike Cnty. Corr. Facility, 965 F.3d 203 (3d Cir. 2020), a decision from the Court of Appeals for the Third Circuit in which the petitioner was detained pursuant to Section 1226(c). He argued that his detention for over two years was

---

[1]    In recent decisions, district courts in our circuit have occasionally waived the exhaustion requirement for an immigration judge's denial of bond.  See e.g., Lopez Flores v. Brackett, et al., No. 1:26-CV-94-PB-TSM, 2026 WL 1179959, at *3 (D.N.H. Apr. 30, 2026) (finding noncitizen not required to exhaust administrative remedies: "the sole basis [for] . . . continued detention is the result of the bond hearing challenged here, [and] his weighty interest in his own liberty outweighs the government's 'institutional interest' in having the BIA take the first pass at review.") (quoting Anversa v. Partners Healthcare System, Inc., 835 F.3d 167, 176 (1st Cir. 2016) (further quotations omitted).  See also Makuraza v. Wesling, et al., No. 1:26-CV-122-JL-AJ, 2026 WL 1068066, at *2 (D.N.H. Apr. 20, 2026) ("Petitioner's case warrants waiver of exhaustion under that standard.  The petitioner is suffering irreparable harm in the form of loss of liberty while detained."); Ganzhi v. Moniz, et al., No. 26-CV-11478-PBS, 2026 WL 1194941, at *1 (D. Mass. May 1, 2026) ("the Court holds that Petitioner need not exhaust an appeal to the BIA on his due process challenge given the irreparable harm caused by his allegedly unlawful and ongoing detention") (collecting cases).

unreasonable, and, because his removal proceedings were likely to continue for several more months, there was no end to his detention in sight. Id. at 208. The Third Circuit allowed the petitioner to challenge his detention under the Due Process Clause, and identified four "nonexhaustive" factors for courts to consider when reviewing challenges to the constitutionality of continued detention under Section 1226(c): (1) duration of detention; (2) whether the detention is likely to continue; (3) "reasons for the delay, such as a detainee's request for continuances;" and (4) whether conditions of confinement are "meaningfully different" from criminal punishment. Id. at 211. After considering those factors, the Third Circuit determined that the petitioner's detention had "grown unreasonable," and the government was required to hold a bond hearing and justify his continued detention. Id. at 214.

German-Santos provides a helpful framework for considering claims of prolonged detention. That framework has been adopted in several cases in this district in the context of prolonged detention claims. See Rosales-Navares, 2026 WL 1133463, at *4; Fils-Aime v. FCI Berlin, Warden, 808 F. Supp. 3d 218, 224-26 (D.N.H. 2025); K-S- v. Warden, FCI-Berlin, No. 25-CV-288-SE, 2025 WL 3671774, at *4-5 (D.N.H. Dec. 17, 2025); Beneche v. FCI Berlin Warden, No. 26-CV-203-LM-TSM, 2026 WL 1031050, at *3-5

(D.N.H. Apr. 16, 2026).  But, the remedy sought (and granted) in German-Santos was a bond hearing before an immigration judge, which Aziwung insists he is not seeking.  See Document No. 11 at 11.

Precedent is clear that the "remedy for a prolonged detention is a bond hearing before an immigration judge at which the government bears the burden of proving that the alien should not be released on bond."  Fils-Aime, 808 F. Supp. 3d at 226 (cleaned up) (quotation omitted).  See also Rosales-Navares, 2026 WL 1133463, at *6 ("the appropriate remedy for a prolonged detention is a bond hearing before an immigration judge") (internal quotations omitted).  When Aziwung "appeared before an Immigration Judge who reviewed and heard evidence, held the Government to its burden of proof, and found by clear and convincing evidence that [he] is a danger to the community," he received constitutionally required due process.  O'leary v. Hyde, No. 2:26-CV-00036-JAW, 2026 WL 686295, at *6 (D. Me. Mar. 11, 2026).[2]

---

[2]    Of course, federal immigration officials must comply with due process principles in denying a noncitizen's request for release on bond.  See, e.g., Flores v. Brackett, 2026 WL 1179959, at *2 ("it is well established in the First Circuit that the government does not have 'discretion' to exceed the 'constitutional restraints' on its detention authority.  Rather, the government's decision 'in each case to grant or deny bond' is only unreviewable under § 1226(e) to the extent that it falls

Aziwung received the bond hearing that due process requires, and there is no suggestion or argument in the record that his bond hearing failed to satisfy the minimum requirements of due process.  Aziwung's due process claim is therefore necessarily denied.

### Conclusion

While sympathetic to the fact that Aziwung has spent nearly nine months in ICE detention, the court also notes that Aziwung's bond hearing occurred in September, 2025, prior to his merits hearing in October, 2025, where the immigration judge granted Withholding of Removal.  Thus, the circumstances of Aziwung's confinement have changed since his earlier bond,

---

"within those limits" set by the Due Process Clause.") (quoting Hernandez-Lara v. Lyons], 10 F.4th 19, 33-34 (1st Cir. 2021)); see also Makuraza v. Wesling, 2026 WL 1068066, at *2 ("although the court may not review the IJ's discretionary judgment, the IJ does not have discretion to fail to apply the burden of proof that due process requires.") (quoting Mayancela Mayancela v. FCI Berlin, Warden, No. 25-CV-348-LM-TSM, 2025 WL 3215638 at *5 (D.N.H. Nov. 18, 2025)) (cleaned up).

But, Aziwung does not argue that the immigration judge's determination failed to comply with due process requirements, nor is there any suggestion in the current record that officials failed to apply those principles and the standard of review mandated by Hernandez-Lara v. Lyons, 10 F.4th at 41.  Nor does Aziwung offer an explanation as to why he did not take advantage of the additional layer of due process protection available to him in the form of an appeal of the immigration judge's denial. Indeed, Aziwung's petition does not mention his bond hearing at all, except to state that he is not seeking a bond hearing.

hearing, and he may well be entitled to a renewed individualized bond hearing pursuant to Hernandez-Lara v. Lyons, 10 F.4th at 41, if he changes his mind and decides to seek such relief.  The petition for writ of habeas corpus directing his immediate release is necessarily **DENIED**.

     **SO ORDERED.**

                           _____

                           Steven J. McAuliffe
                           United States District Judge

June 5, 2026

cc:  Counsel of Record

13